# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Case No. 18-cv-22303-WILLIAMS

NOEL ZUNIGA and
C. CARLIN CASTILLO

      Plaintiffs,

vs.

RUSSELL S. JACOBS, *et al.*,

      Defendants.

_____/

## OMNIBUS ORDER

This matter is before the Court on Plaintiffs' motion to strike (DE 78), Plaintiffs' motion for summary judgment (DE 57), and Defendants' motion for summary judgment (DE 60). For the reasons below, Plaintiffs' motion to strike is **GRANTED IN PART**, Plaintiffs' motion for summary judgment is **DENIED**, and Defendants' motion for summary judgment is **GRANTED IN PART**.

## I.      BACKGROUND

This action arises out of the Defendants'—the Jacobs Law Group ("Jacobs Law" or "Firm") and its attorneys Russell Jacobs and Scott Shapiro—attempts to collect association fees and related costs for the Beach Club at Fontaine Bleau Park Condominium ("Beach Club") from Plaintiffs who are unit owners. In 2006, Zuniga purchased unit F-107 independently and unit F-105 with Castillo. (DE 58 at ¶¶ 6, 8.) As unit owners, Plaintiffs were bound by the Beach Club's Declaration of Condominium ("Declaration"), which required owners to pay assessment fees for routine maintenance

of the common elements, as well as for damage to the common areas caused by the "negligence, misuse or neglect of specific Unit Owners." (*Id.* at ¶ 1,2; DE 59-43 at 14.)

The first collection activity at issue is Defendants' mailing of a letter to Zuniga on July 31, 2017 seeking to collect a balance of $2,902.94 on F-107's account. (DE 59-16.) It informed Zuniga that the Beach Club intended to "file a lien against your property on or after the date which is thirty days after the date on which this letter has been delivered to you." *Id.* The letter explained that unless Zuniga requested verification of the balance within thirty days, the debt would be assumed valid. *Id.* On August 30, 2017, Zuniga sent Jacobs Law a letter disputing the debt and requesting verification. (DE 58 at ¶ 22.) When the Firm and the Beach Club did not respond, Zuniga filed a complaint with Florida's Division of Business and Professional Regulation ("DBPR"). (*Id.* at ¶ 27.)

During the course of the DBPR investigation, the Beach Club provided Zuniga ledgers for F-105 and F-107 dated September 26, 2017. (*Id.* at ¶ 28.) Unit F-107's ledger indicated that on July 31, 2017, the amount due was $1,369.87. (DE 59-20.) Zuniga also discovered that the association had not posted a payment on April 22, 2016 which the Beach Club had cashed, causing Zuniga to incur late fees that should not have been charged. (DE 58 at ¶¶ 33-35.) Zuniga further discovered that eleven payments posted to the Beach Club's F-107 ledger did not appear on a separate ledger kept by the Firm. (*Id.* at 35.) Defendants relied on the balance in the Firm's separate ledger in preparing the July 31, 2017 communication. *Id.* In February 2018, in a letter addressed to Shapiro, DBPR informed Shapiro that the Beach Club was required to post the missed April 22, 2016 payment, remove the late fee, and provide Plaintiffs with accurate ledgers by March 2, 2018. (DE 20-13.)

The second collection activity at issue is a lawsuit that Scott Shapiro filed against Castillo in Miami-Dade County Court in January 2018 to collect $1,200 for property damage that she had allegedly caused to parts of the Beach Club's roof near unit F-105. (*Id.* at ¶ 46.) Defendants initiated the action at the request of the Beach Club, who provided Jacobs Law a copy of an invoice for repair services for $1,200. (DE 61 at ¶¶ 13-15.) The September 26, 2017 F-105 ledger indicated that on June 6, 2017, the Beach Club posted $1,200 on the account for "damage to Bldg F roof and repair costs." (DE 59-19 at 4.) Prior to the posting of this charge, there was a positive balance of $222.83 on the account. *Id.* The balance was automatically applied towards the $1,200 charge when it posted, leaving a balance of $977.17. *Id.*

Plaintiffs filed the instant action on June 8, 2018. (DE 1.) In count 1 of the amended complaint, Zuniga asserts that by sending the July 31, 2017 letter, Jacobs and the Firm violated various sections of the Fair Debt Collection Practices Act ("FDCPA"). (DE 20-1.) Zuniga alleges that Jacobs and the Firm violated sections 1692(e) and 1692(e)(2)(A) by seeking to collect a debt for an incorrect amount; section 1692(d) by "wrongfully and without basis" sending communication threatening to record a claim of lien against the property; and section 1692(e)(5) by "threatening to file a Claim of Lien where they had no legal right to do so, or never intended to do so at all." (*Id.* at ¶¶ 86-89.) Zuniga further alleges that they violated section 1692(f)(1) by attempting to collect interests on amounts other than overdue assessments, which is not permitted under the Beach Club's governing documents or Florida law.[1] (*Id.* at ¶ 92.)

---

[1] Zuniga also asserts a section 1692(g)(b) claim against Jacobs and the Firm for their failure to provide verification of debt despite his August 30, 2017 request for validation. (*Id.* at ¶ 93.) On May 13, 2019, Zuniga voluntarily dismissed this claim. (DE 52.)

Zuniga also asserts claims against Shapiro and the Firm in count 1. He alleges that they violated section 1692(f) by "using an unfair or unconscionable means to collect or attempt to collect a debt," when they refused to comply with DBPR's directive to correct F-107's account record and issue an accurate ledger. (*Id.* at ¶ 90.) Moreover, he alleges that Shapiro and the Firm violated section 1692(f) by initiating the state court lawsuit to collect "amounts owed on Unit F105 which had already been deducted from Zuniga and Castillo's account." (*Id.* at ¶ 91.)

In Count 2, Castillo alleges that Shapiro and the Firm violated section 1692(e)(2)(A) by "falsely representing the character, amount, or legal status of debt in the State Court lawsuit" by seeking to recover $1,200 when the Beach Club had already applied a balance of $222.83. (*Id.* at ¶ 96.) Castillo further alleges that they violated section 1692(f) by using an "unfair or unconscionable means" to collect debt by "attempt[ing] to collect amounts owed on Unit F105 which had already been deducted from Zuniga and Castillo's account." (*Id.* at ¶ 97.)

## II. DISCUSSION

### A. Plaintiffs' Motion to Strike

Plaintiffs move to strike Russell Jacob's declaration which is attached as an exhibit to Defendants' response to Plaintiffs' statement of material facts.[2] The declaration

---

[2] Plaintiffs have also moved to strike portions of another declaration signed by Russell Jacobs that was filed as an exhibit to Defendants' Statement of Material Facts. (DE 61-1.) This declaration enumerates facts in support of Defendants' "cessation of debt collection" defense against Zuniga's claims arising from the July 31, 2017 letter. (*Id.* at ¶ 14.) It also sets forth facts to support Defendants' defense that the amount sought by the state court lawsuit does not constitute "debt" under the FDCPA. (*Id.* at ¶¶ 15, 16.) It is unnecessary to decide Plaintiffs' request to strike portions of this declaration supporting these defenses; these defenses are discussed later on in

enumerates facts in support of the defense that Defendants cannot be held liable under the FDCPA because they are not "debt collectors" under the statute. (DE 70-1.) The facts set forth in the affidavit are based on Jacob's personal knowledge from his employment at the Firm, as well as his "review of documents" and the Firm's "business records." (*Id.* at ¶ 4.) Plaintiffs move to strike the declaration under Rule 37 for non-compliance with Rule 26. They contend that Defendants failed to disclose the witnesses and documents they intend to use in support of this defense prior to summary judgment. Instead, Defendants proffered Jacobs' affidavit, which identifies Jacobs as a witness and the existence of certain business records, two months after the close of discovery.

"The Federal Rules of Civil Procedure provide for required disclosure of materials that a party will use to support its claims or defenses." *Slater v. Energy Servs. Grp. Int'l Inc.*, 441 F. App'x 637, 642 (11th Cir. 2011). Pursuant to Rule 26(a)(1)(A), parties must provide in their initial disclosures "the name . . . of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses" as well as "all documents, electronically stored information, and tangible things that the disclosing party has in its possession . . . and may use to support its claims or defenses." Under Rule 26(e)(1)(A), parties have an ongoing duty to supplement their initial disclosures in a "timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Rule 37(c)(1) provides for sanctions if a party fails to make required disclosures:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at

---

the decision, finding that both are meritless and Defendants are prohibited from asserting them at trial. *See infra* at 12-15 and 21-23.

> a hearing, or trial, unless that failure was substantially justified
> or is harmless.

Defendants have asserted the "debt collector" defense for the first time in their response to Plaintiff's motion for summary judgment. Moreover, in violation of Rule 26, Defendants have failed to disclose the witnesses and documents they intend to rely upon to support their "debt collector" defense in their initial disclosures or in any supplemental disclosures under Rule 26(e). Defendants have identified the Firm's corporate representative, Jacobs, and Shapiro in their Rule 26(a)(1)(A)(i) disclosures, but did not indicate that these three individuals would have information regarding the "debt collector" defense. (DE 78-2.) In their Rule 26(a)(1)(A)(ii) disclosures, Defendants have failed to identify the documents and business records that Jacobs relied upon in preparing the declaration. *Id.*

In *Martinez v. Russell Jacobs, et. al.*, Case No. 15-23281-CV-KMW (S.D. Fla. Aug. 19, 2016) ("*Martinez*"), a FDCPA case where Jacob's Law and Russell Jacobs were also the defendants, this Court granted the plaintiff's motion to strike under nearly identical circumstances. In *Martinez*, the plaintiff moved to strike the defendants' affidavit that was signed by Russell Jacobs and filed as an exhibit to their motion for summary judgment. That affidavit is almost identical to the one in this case and also purported to support the "debt collector" defense. *Martinez* at 6-8. And like this instant case, the defendants did not assert the "debt collector" or disclose the existence of documents or information underlying it until summary judgment. *Id.* The Court granted the plaintiff's motion to strike, explaining:

> [P]ursuant to Rule 26, Jacobs Law had a continuing obligation
> to produce to Martinez any documents or information it would
> use in support of its "debt collector" defense. Jacobs Law

failed to meet this obligation and pursuant to Rule 37 may not now use undisclosed information to support a motion. Moreover, litigants in federal court have long known that "[m]odern instruments of discovery . . . [and] pretrial procedures make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.* 356 U.S. 677, 682 (1958). Consequently, the Court strikes the portion of the affidavit regarding Jacob's Law's 'debt collector' defense and will not consider any statements of fact or arguments which rely on this portion in deciding the cross-motions for summary judgment.

*Id.* at 7-8 (record citations omitted).

The reasoning in *Martinez* applies with equal force here. Defendants have provided no reason for why their disregard of Rule 26 is substantially justified. Nor have they provided an adequate explanation for why their neglect is harmless. Plaintiffs requested all documents referenced in Defendants' Rule 26(a)(1)(A)(ii) disclosures in their first request for production. (DE 59-49 at ¶ 29.) Had Defendants disclosed the existence of the business records, these documents would have been produced to Plaintiffs, who would have had the opportunity to conduct discovery with regard to them. Accordingly, the Court strikes Jacob's declaration (DE 70-1) from the record and will not consider it in deciding the cross motions for summary judgment.

## B. Cross Motions for Summary Judgment

### 1. The Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under the governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

7

And any such dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the Court considers the evidence in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). The Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the non-movant." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir. 2008) (quotation marks and citations omitted). At the summary judgment stage, the Court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

For issues for which the movant would bear the burden of proof at trial, the party seeking summary judgment "must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence...that would entitle it to a directed verdict if not controverted at trial. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party. If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party, in response, come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-16 (11th Cir. 1993) (emphasis in original).

   **2.  Plaintiffs' Motion for Summary Judgment**

Plaintiffs move for summary judgment on all of their claims. Because there is a genuine issue of material fact as to whether Defendants are "debt collectors" under the FDCPA—an essential element of Plaintiffs' FDCPA claims—Plaintiffs' motion for summary judgment is denied.

"The elements of an FDCPA claim include: (1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debtor collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Pescatrice v. Orovitz*, 539 F. Supp. 2d 1375, 1378 (S.D. Fla. 2008) (citation omitted). The FDCPA defines a debt collector as "[a]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(a)(6).

To establish that an attorney or law firm is a "debt collector" under the FDCPA, "a plaintiff must show that the attorney or law firm collects debts as a matter of course for its clients or for some clients, or collects debts as a substantial, but not principal, part of his or its general law practice." *Schroyer v. Frankel*, 197 F.3d 1170, 1176 (6th Cir. 1999). Courts have considered several factors in making this determination, including, "the volume of the attorney's collection activities, the frequent use of a particular debt collection document or letter, and whether there exists a steady relationship between the attorney and the collection agency or creditor he represented." *Id.* Courts have also "maintained that even where debt collection takes up a minor portion of a law practice,

'debt collector' liability may lie where the defendant has an 'ongoing relationship' with a client whose activities substantially involve debt collection." *Id.* (citation omitted).

Plaintiffs have proffered evidence for their claim that the Defendants are "debt collectors" under the FDCPA. For instance, they have provided a print out of Jacobs Law's website showing that the Firm advertises its debt collection services. (DE 20-3.) They have also provided copies of the claims of liens that Defendants have filed on behalf of clients, including those on nearly two dozen units in the Beach Club and on several other units in other condominiums. (DE 20-4, 20-5.) Plaintiffs also point to the July 31, 2017 collections letter, which states "[t]his firm is deemed a debt collector" and that Jacobs Law "is attempting to collect a debt." (DE 20-2.) Defendants have not proffered any evidence on this issue other than the stricken Jacob's declaration.[3]

Nevertheless, in reviewing the record in the light most favorable to the non-moving party, the Court finds that there are triable issues of material fact as to Defendants' status as "debt collectors" under the FDCPA. Plaintiffs have not affirmatively established that there is no genuine issue of material fact that Defendants collect "debts as a matter of course" for certain of its clients. *Schroyer*, 197 F.3d at 1176. While Defendants have filed nearly two dozen claims of lien for the Beach Club in 2017 (DE 20-4), without evidence that they have filed claims of lien for the Beach Club with a similar degree of

---

[3] In their response to Plaintiffs' motion for summary judgment, Defendants have requested the Court to enter summary judgment in their favor contending that "the record affirmatively demonstrates Defendants are not 'debt collectors.'" (DE 69 at 6-7.) Because Plaintiffs have proffered evidence supporting the "debt collector" element and Defendants' evidence has been stricken from the record, granting Defendants' request for summary judgment is not appropriate. *See Gulisano v. J.A. Cambece Law Office, PC*, No. 15-81378-CIV, 2016 WL 7536097, at *3 (S.D. Fla. Aug. 8, 2016); *Martinez* at 11.

frequency in other years, a reasonable juror could find that Defendants' representation of the Beach Club is on a short term basis, and therefore insufficient to constitute an "ongoing relationship with a client whose activities substantially involve debt collection." *Schroyer*, 197 F.3d at 1176. Similarly, a reasonable juror could find Defendants' filing of seven claims of lien for North Bay Village over the course of more than two years to be too sporadic to establish that Defendants collected debts as a matter of course for this client. (DE 20-5.)

Plaintiffs have also failed to affirmatively establish that there is no issue of material fact that debt collection is a "substantial" part of Defendants' "general law practice." *Schroyer*, 197 F.3d at 1176. Plaintiffs have provided no information regarding the volume of Defendants' debt collection practice in relation to their other practices, or the extent to which their overall revenue is based on debt collection services. Moreover, Defendants' advertisement of their debt collection services on their website and their self-identification as "debt collectors" in their collection letter are not dispositive. *See Martinez* at 10 ("An entity cannot transform itself into a 'debt collector' within the meaning of the FDCPA simply by noting in a letter that it may be considered one under the Act."); *Gulisano*, 2016 WL 7536097 at * 3 ("evidence of the contents of Defendant's website discussing Defendant's consumer debt collection practice" is not dispositive). Because there is a triable issue of fact as to an essential element of Plaintiffs' FDCPA claims, Plaintiffs' motion for summary judgment is denied.

### 3. Defendants' Motion for Summary Judgment

#### a. Count 1 Claims

Defendants move for summary judgment on Zuniga's claims arising from the July 31, 2017 correspondence. First, Defendants move for summary judgment on Zuniga's claims arising from inaccurate debt contending that they cannot be liable under the FDCPA for misrepresenting the amount owed because they ceased debt collection activity upon receiving Zuniga's demand for verification. Defendants also move for summary judgment on Zuniga's section 1692(e)(5) and 1692(d) claims. They assert that there is an absence of record evidence that Defendants lacked the intent to file a claim of lien against F-107 or that the letter contained a tone of intimidation. For the reasons below, Defendants are entitled to summary judgment on Zuniga's 1692(d) claim only.

### i. "Cessation of Debt Collection" Affirmative Defense

Defendants move for summary judgment on Plaintiffs' section 1692(e), 1692(e)(2)(A), 1692(e)(5) and 1692(f)(1) claims. In essence, Defendants assert the affirmative defense that because they have complied with section 1692(g)(b) by ceasing all collection activity upon receiving Zuniga's request for validation,[4] they are insulated from all FDCPA liability based on their misrepresentation of debt in the July 31, 2017 correspondence.

Defendants' "cessation of debt collection" defense is not supported by the text of the FDCPA. The Eleventh Circuit has described the FDCPA as a strict liability statute that "subjects debt collectors to liability even when violations are not knowing or intentional,"

---

[4] "Section 1692g(b) thus gives debt collectors two options when they receive requests for validation. They may provide the requested validations and continue their debt collecting activities, or they may cease all collection activities." *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997).

and affords only "a narrow carve-out to the general rule of strict liability, known as the 'bona fide error' defense," set forth in section 1692(k)(c). *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011). Unlike the "bona fide error" defense, Defendants' "cessation of debt collection" defense is not expressly found in the FDCPA. Defendants point to no statutory language suggesting that Defendants' compliance with the validation process under section 1692(g) insulates them from all FDCPA liability arising from the collection letter. In the absence of statutory language, the Court declines to recognize a new affirmative defense to FDCPA liability when Congress has explicitly provided for only a single, narrow exception. *See Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1300 (11th Cir. 2015) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent."); *United States v. K.P. Kauffman Co., Inc.*, 389 F. Supp. 3d 935, 945 (D. Colo. 2019) ("I cannot create an exception to a statute that the plain language does not suggest or demand.").

Moreover, the "cessation of debt collection" defense is not supported by Eleventh Circuit precedent. The Eleventh Circuit has previously held that a debt collector's compliance with section 1692(g)'s validation process does not shield it from liability under other provisions of the FDCPA. In *Hepsen v. Resurgent Capital Servs., LP*, 383 F. App'x 877 (11th Cir. 2010), the debt collection agency, JCC, sent the plaintiff a collection letter on behalf of a client without verifying the existence or amount of debt. After the plaintiff sought verification pursuant to the letter's section 1692(g)(a) notice, the agency ceased all collection activity. The plaintiff then filed a FDCPA action against JCC under section 169e(2)(A) and 1692e(10), alleging that the agency had falsely represented the amount

of debt and named the wrong creditor. In affirming the district court's denial of the parties' cross motions for summary judgment, the Eleventh Circuit rejected the agency's argument that "it can't be held liable under the FDCPA for its actions since it followed the procedural 'validation' requirements of the statute." JCC's initial brief at 12. The court held that ceasing collection activities upon receipt of the plaintiff's verification request as required by section 1692(g)(b) could not shield JCC from liability under 1692e, explaining:

> But § 1692g(b) does not modify the previous section of the FDCPA, § 1692e, prohibiting a debt collector from attempting to collect an inaccurate debt, so JCC still could be liable for sending the demand letter to Hepsen even if the FDCPA does not explicitly require that JCC verify the debt before sending a demand.

*Hepsen*, 383 F. App'x at 882.

Similarly, in *Owen v. I.C. System, Inc.*, the Eleventh Circuit held that a debt collector who maintained an internal policy of suspending collection and providing verification once a creditor contested the debt—a process the court characterized as merely complying with the "statutory requirements" of 15 U.S.C. § 1692(g)(b)—was not entitled to rely on the bona fide affirmative defense. *Owen*, 629 F.3d at 1275. The court explained that allowing a debt collector to immunize itself from all FDCPA liability by complying with only one of the statute's provisions would contravene Congress's intent that a violation of a single FDCPA provision is enough to establish civil liability. *See* 15 U.S.C. § 1692(k) (establishing civil liability for "any debt collector who fails to comply with any provision of this subchapter."). This reasoning applies with equal force to an independent "cessation of debt collection" affirmative defense. Allowing Defendants to rely on such a defense would "allow debt collectors to violate some provisions of the

14

FDCPA so long as they complied with the rest of the Act, a result clearly at odds with Congress's intent." *Owen*, 629 F. 3d at 1275.

Accordingly, the Court joins the other courts in this circuit that have refused to find a debt collector's compliance with section 1692(g) sufficient to insulate it from liability under other provisions of the FDCPA. *See, e.g., Garett v. I.Q. Data Int'l, Inc.,* No. 5:18-CV-352-OC-30PRL, 2018 WL 7372077, at *3 (M.D. Fla. Aug. 9, 2018) ("But to the extent IQ argues its compliance with § 1692g(b) insulates it from all liability under the FDCPA, IQ's argument misses the mark."); *Williams v. Edelman*, 408 F. Supp. 2d 1261, 1270 ("Defendants' argument boils down to an assertion that where a debt collector has complied with the notice requirement of the FDCPA [under section 1692(g)], a plaintiff may not prosecute a claim under 15 USC Section 1692(e)(2)(A). The argument goes too far."). For these reasons, Defendants are not entitled to summary judgment on Zuniga's claims based on their "cessation of debt collection" defense and are precluded from asserting it at trial.

### ii. Section 1692(e)(5)

Zuniga alleges that Defendants violated section 1692(e)(5) when they threatened "to file a Claim of Lien where they had no legal right to do so, or never intended to do so at all." (DE 20-1 at ¶ 89.) Defendants move for summary judgment on this claim contending that Zuniga has proffered no evidence demonstrating that Defendants lacked the intent to file a claim of lien on F-107.

Section 1692(e)(5) proscribes making "threat[s] to take any action that cannot legally be taken or that is not intended to be taken." "District courts within the Eleventh Circuit have confirmed the application of the 'least sophisticated consumer standard' to

the first ('illegal threats') but not second ('unintended threats') prong of § 1692e(5)." *In re Cambron*, 379 B.R. 371, 375 (M.D. Ala. 2007). Accordingly, "threatening action with no intent to take it is a *per se* violation." *Id.*

Defendants' motion for summary judgment on this claim is denied because there are triable issues of material fact as to (1) the conduct that is being threatened by the letter, and (2) Defendants' intent to take that conduct. The Eleventh Circuit case *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985) is instructive. In *Jeter*, the debt collector sent the plaintiff a letter informing her that "unless satisfactory arrangements are made within five (5) days from this date, we will recommend to our client, suit and subsequent action (judgment, garnishment, levy, and/or attachment proceedings) may be instigated against you by their attorneys." *Jeter*, 760 F. 2d at 1171. The plaintiff did not respond. A month later, the debt collector sent the plaintiff a second letter stating "[t]his is our final notice to you before recommending our client give the account to their attorney for legal action. . . we will do so if the entire balance is not in this office within the next five days." *Id.* After the plaintiff contested the debt, the debt collector ceased its collection efforts. The plaintiff sued the debt collector under section 1692(e)(5), along with other claims, alleging that the letters had falsely indicated that the defendant would recommend legal action immediately after the expiration of the five-day period or shortly thereafter, as the debt collector had not recommended any legal action to its client.

The district court granted summary judgment for the defendant after relying on its affidavit stating that "defendant did, in fact, intend to recommend legal action." *Id.* at 1176. The Eleventh Circuit reversed, holding that there were triable issues of material fact regarding the conduct threatened by the letter and the defendant's intent to take such

conduct. The court explained that one reasonable interpretation of the letter is that "the alleged debtor is simply required to make payment to Credit Bureau within five days, and if the alleged debt is not paid, Credit Bureau will recommend suit *sometime* thereafter." *Id.* (emphasis added). The court noted that a reasonable jury could also "read the letter as a threat to recommend legal action *immediately* upon the expiration of the five-day period or shortly thereafter." *Id.* (emphasis added). The court explained that at trial, "the jury has two tasks. First, it must ascertain the meaning of Credit Bureau's letters to determine just what was threatened. . . It must then decide whether Credit Bureau intended to take such threatened action in this case." *Id.* Moreover, it explained that the jury should consider the defendant's affidavit as well as the "contrary evidence that legal action . . . was *never* recommended at all" when considering the second inquiry. *Id.*

Like *Jeter*, there are triable issues of fact as to the threat contained in the July 31, 2017 letter. The letter informs Zuniga that amounts "are past due on your account and must be paid within 30 days from your receipt of this letter." (DE 20-2.) The letter then provides:

> As you are aware, the Association's constituent documents and applicable law provide that the Association may file and record a claim of lien against any property that is delinquent in its assessments. Accordingly, **this letter shall serve as notice to you of the Association's intent to file a lien against your property on or after the date which is thirty days after the date on which this letter has been delivered to you**.

*Id.* (emphasis added). It also includes the section 1692(g)(a) notice informing Zuniga of his right to request validation within thirty days of receiving the letter and explaining that unless Zuniga disputed the debt within this period, "the Debt will be assumed to be valid." *Id.* However, nowhere in the letter have Defendants explained that a claim of lien will not

be filed if Zuniga exercises his validation rights. *Id.* Accordingly, a reasonable jury could find that the letter threatens the filing of a claim of lien if Zuniga fails to resolve the outstanding balance within thirty days under any circumstance regardless of whether he exercises his rights under section 1692(g)(a). Alternatively, a reasonable juror could interpret the letter as threatening the filing of a claim of lien only if Zuniga does not resolve the balance and also fails to exercise his section 1692(g)(a) validation rights within thirty days.[5]

Moreover, there are triable issues of fact as to whether Defendants possessed the intent to take the threatened conduct. In an attempt to establish that they possessed the intent to file a claim of lien on F-107, Defendants point to a declaration signed by Russell Jacobs, in which he explained that the "Beach Club never conveyed any intent other than to pursue all possible legal remedies against Zuniga." (DE 61-1 at ¶ 12.) Defendants also rely on copies of claims of lien that Jacobs Law filed on behalf of the Beach Club and other condominiums. (DE 20-4, DE 20-5.) Defendants' evidence is not dispositive. The Eleventh Circuit has repeatedly explained that a conclusory affidavit regarding a debt collector's intent is not dispositive. *See Jeter*, 760 F.2d at 1177 ("there is a genuine issue of fact as to whether Credit Bureau ever intended to recommend legal action against Jeter. Credit Bureau's conclusory affidavit that there was such an intent is not dispositive.

---

[5] Because there are triable issues of material fact as to the conduct threatened by the letter, it is not appropriate to grant Defendants' motion for summary judgment on the grounds that no reasonable jury could find that the least sophisticated consumer would believe that the letter threatens conduct that is not lawful. Should a jury find that the letter threatens filing of a claim of lien if Zuniga fails to resolve the outstanding balance within thirty days under any circumstance—even if Zuniga exercises his section 1692(g) validation rights—a reasonable juror could find that the least sophisticated consumer would believe that the letter threatens conduct that is not lawful.

. . ."); *Newman v. Ormond*, 456 F. App'x 866, 867-68 (11th Cir. 2012) ("A debt collector's 'conclusory affidavit' that there was intent to take a certain course of legal action is not dispositive, especially in light of conflicting evidence.") (citation omitted).

It is also uncontested that Defendants have never filed a claim of lien on F-107 despite Zuniga's failure to pay the stated balance within thirty days. (DE 20 at ¶ 73; DE 61 at ¶ 12.) Should the jury find that the letter threatens to file a claim of lien if Zuniga did not resolve the debt within thirty days regardless of whether he seeks validation, a reasonable jury could find Defendants' failure to file a claim of lien to be probative evidence of their lack of intent to take the threatened conduct. *See Jeter*, 760 F.2d at 1176 ("the jury will have to consider the contrary evidence that legal action was . . . *never* recommended at all."); *Kaplan v. Law Offices of Timothy E. Baxter & Assocs., P.C.*, No. 11-14886, 2013 WL 2947369, at *4 (E.D. Mich. June 14, 2013) ("Although Plaintiff does not present any other evidence of Defendant's intention to file, the Court believes that the absence of a lawsuit against Plaintiff is enough circumstantial evidence to create a question of fact."). Because there are triable issues of fact regarding the conduct threatened by the letter and Defendants' intent to take such action, granting summary judgment for Defendants on Zuniga's section 1692(e)(5) claim is not appropriate.

### iii. Section 1692(d)

Zuniga claims that the July 31, 2017 letter violated section 1692(d) by threatening "to record a Claim of Lien against the Property which could ultimately result in the loss of the Property through foreclosure proceedings." (DE 20 at ¶ 86.) Defendants move for summary judgment claiming that the letter does not violate section 1692(d) in the absence of a "tone of intimidation." (DE 60 at 9-11.)

Section 1692(d) prohibits a debt collector from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Banned conduct includes the "use of violence," the "use of obscene or profane language," and repeated phone calls intended to annoy or harass "any person at the called number." *Miljkovic*, 791 F.3d at 1305. Section 1692(d) claims are viewed "from the perspective of a consumer whose circumstances make him relatively more susceptible to harassment, oppression, or abuse." *Id.* (citation omitted).

Defendants are entitled to summary judgment on Zuniga's section 1692(d) claim because the law in this circuit is that the mere threat of taking legal action does not rise to the level of a section 1692(d) violation. *See Jeter*, 760 F.2d at 1179. "A Section 1692[d] violation requires more than just proof of a false statement or a threat to resort to the legal system or to credit report a debt." *Thompson v. Resurgent Capital Servs., L.P.*, No. 2:12-CV-01018-JEO, 2015 WL 12681653, at *2 (N.D. Ala. July 17, 2015). "Rather, § 1692[d] contemplates conduct that is intimidating, uncivil, or unduly intrusive or embarrassing in its tone or manner." *Id.*

Even after drawing all inferences in favor of Zuniga, and viewing the letter from the perspective of a consumer who is susceptible to harassment and abuse, no reasonable jury could find the letter to be intimidating, uncivil, or embarrassing. The language of the letter is "not remotely offensive" and "contain[s] no personal comments directed towards Plaintiff." *Jeter*, 760 F.2d at 1178-1179. The letter informs Zuniga of the legal consequences of disregarding the debt, but the Eleven Circuit has explained "§ 1692[d] does not as a matter of law proscribe" this conduct. *Id.* at 1179. While Zuniga contends that Defendants deliberately sought to collect an invalid amount, the Eleventh Circuit has

made clear that "deception or false representation alone . . . is wholly different from the conduct condemned in subsections (1) through (6) of Section 1692." *Id.* Because the letter does not "manifest a tone of intimidation," Defendants' motion for summary judgment is granted on Zuniga's section 1692(d) claim. *Miljkovic*, 791 F.3d at 1305.

## b. Count 2 Claims

Defendants move for summary judgment on Castillo's count 2 claims arising from their state court lawsuit to recover $1,200 in repair costs. Defendants assert that the $1,200 Defendants seek to collect does not constitute a "debt" under the FDCPA because it does not arise from a consumer transaction. Defendants also contend that the mere filing of a lawsuit does not violate the FDCPA. Third, Defendants argue that they cannot be held liable under the FDCPA for attempting to collect inaccurate debt because they have relied on the Beach Club's representation of the existence and validity of the debt. For the reasons below, these defenses are not meritorious and Defendants are precluded from asserting them at trial.

### i. Is the Amount Sought by the Lawsuit "Debt" under the FDCPA?

"Debt" is defined under the FDCPA as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes. . . . " 15 U.S.C. § 1692(a)(5). "The term 'transaction' is not defined in the FDCPA. At a minimum, however, 'a transaction must involve some kind of business dealing or other consensual obligation." *Surber v. McCarthy, Burgess & Wolff, Inc.*, No. CIV.A. 14-0309-CG-M, 2015 WL 2190941, at *3 (S.D. Ala. May 11, 2015), *aff'd*, 634 F. App'x 292 (11th Cir. 2015) (citation omitted). "Debt" under the FDCPA

"may arise when the obligation at issue is created by 'a promise to pay for a particular good or service.'" *Durso v. Summer Brook Pres. Homeowners Ass'n*, 641 F. Supp. 2d 1256, 1264 (M.D. Fla. 2008) (citation omitted).

The repair costs Defendants seek to collect constitute "debt" under the FDCPA because they arise out of a consumer transaction. Castillo incurred obligations to pay for maintenance to the association's common elements pursuant to the Beach Club's Declaration when she purchased the unit. (DE 59-43.) The Beach Club's Declaration imposed an obligation to pay for regular assessments for routine maintenance, as well as the full costs of repairing damage to the common elements "arising from or is necessitated by the negligence, misuse, or neglect of specific unit owners." (*Id.* at Section 7.1(a).)

It is undisputed that the amount Defendants seek to collect through the state lawsuit arises from the cost of repairing damage to the condominium's roof, a common element, allegedly caused by Castillo's negligence or misuse. In the state court complaint, Defendants alleged that "Castillo and/or her agent entered the common elements of the Condominium Property and commenced work on the air conditioning unit without following protocol," which "caused damage to the Condominium Property's common elements." (DE 59-33.) Defendants further alleged that "the Association has incurred damages totaling $1,200." *Id.* On July 6, 2017, the Beach Club provided Castillo an invoice from A1 Duran Roofing for $1,200 for "drain[ing] flooded roof" and "emergency roof repair." (DE 20-6.) The F-105 ledger dated September 26, 2017 indicated that on June 6, 2017, the Beach Club posted a fee of $1,200 to the unit's account for "Damage to Bldg F roof and repair costs." (DE 59-19.)

Because the costs that Defendants seek to collect in the lawsuit arise from Castillo's obligations under the Beach Club's Declaration, which she became bound by when she purchased the unit, the amount sought constitutes "debt" under the FDCPA. *See Smith v. Atl. Springs Condo. Ass'n, Inc.*, No. 0:15-CV-61155-KMM, 2015 WL 7428745, at *3 (S.D. Fla. Nov. 23, 2015) ("Plaintiff's obligation to pay condominium association fees arose from his initial purchase of the condominium unit"); *Porras v. Vial Fotheringham LLP*, No. 3:13-CV-00699-BR, 2015 WL 2449486, at *12 (D. Or. May 21, 2015) ("[N]onpayment of HOA assessments gives rise to a 'debt' within the meaning of the FDCPA because the liability arises from the original transaction of purchasing a home in the homeowners' association"); *Newman v. Boehm, Pearlstein & Bright, Ltd.*, 119 F.3d 477, 481 (7th Cir. 1997) ("By paying the purchase price and accepting title to their home, the Riters became bound by the Declaration of Covenants, Conditions, and Restrictions of their homeowners association, which required the payment of regular and special assessments imposed by the association. . . the obligation to pay is derived from the purchase transaction itself"). Therefore, Defendants are not entitled to summary judgment on Castillo's count 2 claims based on this defense.

ii. **Can Defendants be Liable Under the FDCPA for Filing a Lawsuit?**

Defendants' reliance on *Gonzalez v. Erskine*, No. 08-20893, 2008 WL 6822207 (S.D. Fla. Aug. 7, 2008) for the proposition that filing a lawsuit cannot give rise to FDCPA liability is misplaced. In *Gonazlez*, the plaintiff filed a FDCPA action against debt collectors for continuing to prosecute a collection lawsuit in state court despite receiving notice that they had allegedly sued the wrong person after the action was filed. In granting the defendants' motion to dismiss, the court distinguished two Southern District of Ohio

cases: *Deere v. Javitch, Black & Rathbone LLP*, 413 F.Supp.2d 886 (S.D. Ohio 2006) and *Williams v. Javitch, Black & Rathbone LLP*, 480 F.Supp. 2d 1016 (S.D. Ohio 2007).

In *Deere*, the defendant collection law firm filed a collection action against the plaintiff in state court seeking an unpaid debt. After Deere filed a motion for a more definite statement, the law firm voluntarily dismissed the action. Deere then filed a claim in federal court alleging that the law firm violated the FDCPA including section 1692(e) by "filing a lawsuit to collect a purported debt without the means of proving the existence of the debt, the amount of the debt, or that [defendant] owned the debt." *Deere*, 413 F. Supp. 2d at 888. However, the plaintiff did not "allege that anything in the state court complaint was false, or that the complaint was baseless." *Id.* at 891. The Southern District of Ohio granted the law firm's motion to dismiss, holding that the plaintiff "essentially alleges that more of a paper trial should have been in the lawyers' hands or attached to the complaint," an obligation that the FDCPA does not impose. *Id.*

In *Williams*, the facts were almost identical to those in *Deere*, with the exception that the plaintiff had filed an amended complaint which alleged that the defendant knew or should have known that the documents supporting the state action included a false and inaccurate affidavit. The court acknowledged that *Deere* held that filing of a collection lawsuit without "an adequate 'paper trial' in the hands of an attorney" is insufficient to state a claim under FDCPA. *Williams*, 480 F. Supp. 2d at 1022. However, it noted that the plaintiff's complaint went beyond the allegations in *Deere* and had sufficiently stated a FDCPA violation. The court in *Gonzalez* granted the defendants' motion to dismiss explaining:

> [T]his case is distinguishable from *Williams* where the
> allegations were that the defendants knowingly used false or

> deceptive affidavits in support of the underlying action. Rather, the facts of this case have a striking resemblance to those in *Deere* in which the court held that where the collection agent law firm simply files a collection complaint, supported by evidence, it is not a violation of § 1692e(5).

*Gonazalez*, 2008 WL 6822207, at *3.

Unlike the plaintiff in *Deere* who did not allege that anything in the state court complaint was false and merely challenged the debt collector's ability to prove its claims, here, Castillo alleges that the state court filing falsely represented the amount that she owed. Specifically, Castillo alleges that Defendants "falsely represent[ed] the character, amount, or legal status of the debt" and "instituted the State Court Lawsuit in an attempt to collect amounts owed on Unit F105 which had already been deducted from Zuniga and Castillo's account." (DE 20-1 at ¶¶ 96, 97.) Courts have routinely held that a debt collector can face FDCPA liability for filing a lawsuit that misrepresents the character, amount, or status of a debt. *See, e.g.*, *Bandy v. Midland Funding, LLC*, No. CIV.A. 12-00491-KD-C, 2013 WL 210730, at *7 (S.D. Ala. Jan. 18, 2013) (citing cases where "the consumer-plaintiffs successfully stated FDCPA claims by alleging that representations made in the state court collection complaints themselves were intentionally false or deceptive."); *Delawder v. Platinum Financial Services Corp.*, 443 F.Supp.2d 942, 948 (S.D. Ohio 2005) ("Courts have recognized claims under Section 1692f(1) where, as here, a debt collector files a lawsuit seeking an amount allegedly greater than the amount owed under a debt agreement."); *Hill v. Javitch, Block & Rathbone, LLP*, 574 F. Supp. 2d 819, 824 (S.D. Ohio 2008) ("a debt collector will only be liable [under the FDCPA] where it files a false document or false affidavit with the complaint, *makes false claims regarding the debt*, or fails to make a reasonable investigation into whether or not the debt existed.")

(emphasis added); *Gigli v. Palisades Collection, L.L.C.*, No. 3:CV-06-1428, 2008 WL 3853295, at *8 (M.D. Pa. Aug. 14, 2008) (denying Defendant's motion for summary judgment where "Plaintiff has averred that the complaint filed in the underlying action falsely represented the character, amount, or status of a debt and sought to collect amounts not authorized by an agreement.").

Moreover, Castillo's claims are akin to the allegations that the court in *Williams* held were sufficient to state a FDCPA violation. Castillo alleges facts suggesting that Defendants knew or should have known that the document underlying the state action—specifically, the roofing repair invoice for $1,200 the Beach Club provided Jacobs Law before the Firm initiated the action—did not accurately reflect the amount Castillo actually owed the Beach Club. *See* DE 20-1 at ¶¶ 76-84. Plaintiffs have not only adequately alleged FDCPA violations but have also supported these allegations with probative evidence. Plaintiffs proffered evidence demonstrating that Defendants knew or had reason to know that a $222.83 credit had already been applied when Defendants filed the lawsuit, but nonetheless sought to collect the amount indicated in the invoice. Zuniga explained in his affidavit that in November 2017, two months before Jacobs Law received the roof repair invoice and filed the state lawsuit, Shapiro provided Zuniga copies of ledgers for F-105 and F-107 dated September 26, 2017. (DE 59-13 at ¶ 23.) The F-105 ledger showed that a $222.83 positive balance on the account was applied against the $1,200 charge on June 6, 2017, leaving a balance of $977.17. (DE 59-19.)

Because courts have routinely held that a debt collector can be held liable under the FDCPA for filing a lawsuit that misrepresents the character, amount, or status of a debt, as well as for initiating a collection suit despite knowing or having reason to know

that the evidence supporting it does not accurately reflect the amount owed, Defendants'
are not entitled to summary judgment on Castillo's claims.

### iii. Can Defendant Rely on the Beach Club's Representation of the Existence and Validity of the Debt?

Defendants assert the affirmative defense that their reasonable reliance on the Beach Club's representation of the existence and validity of the debt shields them from FDCPA liability based on inaccurate debt. Jacobs explained in his declaration that Defendants "relied on Beach Club to determine if a valid basis existed for the lawsuit and the amount it believed Castillo owed," and that "[a]t no time prior to filing the State Court Action [were Defendants] advised by Beach Club or any other person or entity that Beach Club had applied a credit against the $1,200 it claims Castillo and/or Zuniga owed." (DE 61-1 at ¶¶ 19, 21.) Defendants claim that they were entitled to rely on the Beach Club's representations of the existence and validity of debt at issue and had no duty to perform a pre-collection investigation.

The Court is unpersuaded that a debt collector can immunize itself from FDCPA liability for attempting to collect inaccurate debt so long as the amount sought is reasonably based on a client's representation. The statute does not explicitly allow for this exception and courts in this circuit have consistently refused to recognize it. *See, e.g.*, *Malone v. Accounts Receivable Res., Inc.*, No. 18-CIV-81254-RAR, 2019 WL 4926294, at *5 (S.D. Fla. Oct. 6, 2019) (Defendant "is not entitled to simply rely on the presumption that all debts referred by the [creditor] are validly due and owing"); *Garrett*, 2018 WL 7372077 at *3 ("a debt collector—even when there is no duty to investigate the validity of a debt—can be held liable for attempting to collect an invalid debt unless the bona fide error defense is satisfied"); *Lawson v. I.C. Sys., Inc.*, No. 3:18-CV-00083-AKK,

2019 WL 2501916, at *5 (N.D. Ala. June 17, 2019) ("The court is also not persuaded by ICS's contention that it need not raise the bona fide error defense to argue reliance [on creditor's representation] . . This contention is at odds with the holdings of several circuits that Section 1692e imposes strict liability.").

Courts recognizing this defense have relied on the rationale that requiring debt collectors to perform a pre-collection investigation into the validity of the debt would render the validation process set forth in section 1692(g)(a) superfluous. For instance, the court in *Cornette v. I.C. System, Inc.*, 280 F. Supp. 3d 1362 (S.D. Fla. 2017) held that "[a]t least for the initial communication with the consumer, [the debt collector] is entitled to rely on the representations of its clients with respect to consumer debts without the need to conduct a pre-collection investigation." The court explained:

> Nowhere in the FDCPA does the statute specifically require a debt collector to validate a debt prior to seeking collection of such debt. In fact, § 1692g(a)(3) specifically allows a debt collector to assume a debt to be valid if not disputed by the consumer within thirty days of receiving such notice. A reading of the FDCPA that requires pre-collection investigation would therefore render § 1692g(a)(3) superfluous, especially as applied to the first communication between a debt collector and consumer

*Cornette*, 280 F. Supp. 3d at 1369-1370.

Thus, to the extent that this defense has been recognized by courts, its application appears to be limited to initial communication between a debt collector and consumer. *See, e.g., Pratt v. I.C. System, Inc.*, 0560678-CIV, 2006 WL 8432175, (S.D. Fla. May 10, 2006); *McStay v. I.C. System, Inc.*, 174 F. Supp. 2d 42 (S.D.N.Y 2001). However, Defendants cite to no authority—and this court is aware of no cases—where courts have extended this defense to litigation filings. The Court declines to apply this defense to this

case because its underlying rationale does not apply when the collection activity at issue is a lawsuit. While the FDCPA explicitly requires initial communication to contain the section 1692(g)(a) validation notice informing debtor of their right to seek verification, litigation filings are specifically exempt from this requirement under section 1692(g)(d). Thus, any concerns that a pre-collection investigation would render the validation process prescribed by section 1692(g)(a) superfluous is inapplicable when the collection activity is a lawsuit and there is no pre-suit correspondence. Here, prior to initiating the state court lawsuit, Defendants did not send Castillo a pre-suit letter informing him that he had the right to seek validation of the debt within thirty days. Accordingly, Defendants' are not entitled to summary judgment on Castillo's claims based on this defense.

### c. The Section 1692(f) Claims

Defendants move for summary judgment on Plaintiffs' section 1692(f) claims contending that they are redundant of their claims under other sections of the FDCPA. Specifically, Defendants assert that Plaintiffs cannot maintain their section 1692(f) claims because they are based on the same conduct giving rise to their claims under other sections.

Section 1692(f) states that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt," and enumerates eight, non-exhaustive prohibited conduct. District courts in this circuit have held that a plaintiff may not simultaneously maintain a claim under section 1692(f) claim and another FDCPA section for the same conduct, unless the conduct falls within one of the enumerated subsections or the plaintiff alleges facts demonstrating that the conduct rises to the level of being "unfair" or "unconscionable." *See Taylor v. Midland Funding, LLC*, No. 2:14-CV-00854-

SGC, 2015 WL 4670314, at *7 (N.D. Ala. Aug. 6, 2015) ("to the extent a plaintiff alleges how that conduct is unfair or unconscionable under the enumerated subsections of § 1692f, he may maintain claims for violations of both § 1692f and other provisions of the FDCPA"); *Jones v. Fin. Asset Mgmt. Sys., Inc.*, No. 1:18-CV-5784-AT-CCB, 2019 WL 5458010, at *8 (N.D. Ga. July 25, 2019), *report and recommendation adopted*, No. 1:18-CV-5784-AT, 2019 WL 5472934 (N.D. Ga. Aug. 12, 2019) ("even if the same conduct can simultaneously violate both § 1692e and § 1692f, Plaintiff in this case has failed to allege any facts that would rise to the level of being 'unfair' or 'unconscionable.'").

Plaintiffs asserts four claims under section 1692(f). In count 1, Zuniga alleges that "Jacobs and the Firm violated 15 U.S.C. §1692f(1) by collecting or attempting to collect amounts not expressly authorized by the agreement creating the debt or permitted by law where interests on amounts other than assessments is not permitted under the Association's governing documents or Florida law." (DE 20-1 at ¶ 92.) While Zuniga also asserts section 1692(e) and 1692(e)(2)(A) claims based on the same conduct, Zuniga may proceed with this claim because it sufficiently alleges conduct that falls within an enumerated subsection. *See Eslava v. AllianceOne Receivables Mgmt., Inc.*, No. CIV.A. 12-0425-WS-N, 2012 WL 4336012, at *3 (S.D. Ala. Sept. 20, 2012) (a plaintiff may maintain a section 1692(f) claim by alleging "improper acts specifically enumerated in that section"); *Winberry v. United Collection Bureau, Inc.*,697 F.Supp.2d 1279, 1292 (M.D.Ala.2010) (same).

Plaintiffs also assert identical section 1692(f) claims against Shapiro and the Firm for attempting "to collect amounts owed on Unit F105 which had already been deducted from Zuniga and Castillo's account." (DE 20-1 at ¶¶ 91, 97.) However, Defendants are

entitled to summary judgment on both claims. Zuniga has no standing to maintain this claim because the underlying collection activity, the state court lawsuit, is not directed towards him but solely at Castillo. Courts have disallowed individuals who are not the targets of the collection activity to maintain a FDCPA claim against the debt collector unless they have experienced some form of non-pecuniary injury or abuse arising from the debt collection activity. *See Correa v. BAC Home Loans Servicing LP*, 853 F. Supp. 2d 1203, 1209 (M.D. Fla. 2012) ("Because Plaintiff Correa was not injured by the alleged actions of the Defendants, the Court finds that Plaintiff Correa has no standing to bring a claim under FDCPA."); *Burdett v. Harrah's Kansas Casino Corp.*, 294 F. SDupp. 2d 1215, 1227 (D. Kan. 2003) ("Unless plaintiff has a legal status which entitles her to stand in his shoes, she ordinarily does not have standing to assert a FDCPA violation based on collection efforts aimed at her spouse. Plaintiff cites no evidence that NCO directed letters at her"). The state court complaint only names Castillo as the defendant and seeks damages and entry of judgment solely against Castillo. (DE 20-14.) Because Zuniga has neither alleged nor proffered any evidence demonstrating that he has suffered non-economic injury as a result of the state lawsuit, he lacks standing to maintain this claim. *See Reid v. LVNV Funding, LLC*, No. 2:14CV471DAK, 2016 WL 247571, at *2 (D. Utah Jan. 20, 2016) (holding that economic injury is insufficient to confer relative of target of collection activity standing to proceed with a FDCPA claim); *Dewey v. Associated Collectors, Inc.*, 927 F. Supp. 1172 (W.D. Wis. 1996).

Moreover, Castillo may not maintain this section 1692(f) claim because it is based on the same conduct giving rise to her section 1692e(2)(A) claim. Other than alleging in a conclusory manner that Defendants used "an unfair or unconscionable means to collect

or attempt to collect a debt," (DE 20-1 at ¶ 97) Castillo has failed to allege how Defendants' attempt to collect amounts that have already been deducted from the F-105 account rises to the level of being "unfair" and "unconscionable." *See Gause v. Med. Bus. Consultants, Inc.*, No. 8:18-CV-1726-EAK-AAS, 2019 WL 6716635, at *20 (M.D. Fla. Dec. 12, 2019) ("Gause's section 1692f claim is predicated on the same misconduct he alleges violates section 1692e. Because the complaint fails to specifically identify how MBC's conduct was also unfair or unconscionable under section 1692f, dismissal of Gause's section 1692f claim is warranted.").

Finally, Zuniga alleges in count 1 that Shapiro and Jacobs Law violated section 1692(f) by "refus[ing] to correct Zuniga's account records relating to amounts owed on the Property despite DBPR's clear directive to do so." (DE 20-1 at ¶ 90.) Zuniga alleges that DBPR discovered during its investigation that the Beach Club had failed to maintain adequate accounting records for F-105 and F-107, (*Id.* at ¶ 70) and that DBPR then ordered the Beach Club to take certain corrective action and to provide Plaintiffs with accurate ledgers. (*Id.* at ¶ 71.) Zuniga contends that Defendants' continued non-compliance with DBPR's directive constitutes an "unfair or unconscionable means" to collect the debt stated in the July 31, 2017 letter. (*Id.* at ¶ 90.)

This section 1692(f) claim is based on conduct different from those Plaintiffs' have alleged in their other FDCPA claims. Moreover, accepting Zuniga's allegations as true and viewing them in the light most favorable to Plaintiffs, Zuniga has adequately pleaded facts demonstrating that Defendants' misconduct constitutes an "unfair" or "oppressive" means of collecting the debt stated in the July 31, 2017 letter. Zuniga alleges that by failing take corrective action, Defendants "continue to hold" the letter's threat of filing a

claim of lien on F-107 "over Zuniga's head," (*Id.* at ¶ 75) suggesting that Defendants have purposefully disregarded DPBR's directive as a means of pressuring Zuniga into paying the amount stated in the letter. Accordingly, Defendants are not entitled to summary judgment on this claim.

III.    **CONCLUSION**

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Plaintiffs' motion to strike (DE 78) is **GRANTED IN PART**, Plaintiffs' motion for summary judgment (DE 57) is **DENIED**, and Defendants' motion for summary judgment (DE 60) is **GRANTED IN PART**.

Defendants' motion for summary judgment is **GRANTED** as to Zuniga's section 1692(d) claim against Jacobs and the Firm; Zuniga's section 1692(f) claim against Shapiro and the Firm arising from the state court lawsuit; and Castillo's section 1692(f) claim against Shapiro and the Firm arising from the state court lawsuit.

**DONE AND ORDERED** in Chambers in Miami, Florida this 13th day of January, 2020.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE